GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Email: dimitra.sampson@usdoj.gov
JILLIAN BESANCON
California State Bar No. 285869
Email: jillian.besancon@usdoj.gov
RYAN POWELL
Arizona State Bar No. 025695
Email: ryan.powell@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

FILED ☒ LODGED

Feb 28 2024

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-22-08092-007-PCT-SMB |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| True Name Stated: Brenda Lisa Barlow<br>Brenda Barlow, | |
| Defendant. | |

Plaintiff, the United States of America, and the defendant, BRENDA BARLOW, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 51 of the Third Superseding Indictment, Conspiracy to Commit Tampering with an Official Proceeding, in violation of Title 18, United States Code (U.S.C.), Section 1512(k), a Class C felony offense.

2. **MAXIMUM PENALTIES**

   a. A violation of 18 U.S.C. § 1512(k) is punishable by a maximum fine of $250,000, a maximum term of imprisonment of twenty years, or both a fine and term of imprisonment, and a maximum term of supervised release of three years.

   b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

   (1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

   (2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

   (3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

   (4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

   c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

   a. <u>Sentencing Agreements</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence shall not exceed sixty months' imprisonment, followed by a term of supervised release. Nothing in this agreement shall preclude defendant from moving for a downward departure, variance, or sentence below the cap, or the Court from imposing a sentence below the cap.

b. <u>Restitution</u>. Pursuant to 18 U.S.C. § 3663, 3663A and/or 2248, the defendant specifically agrees to pay full restitution to all victims in an amount to be determined by the court, but in no event, more than $100,000.00 per victim. "Victims" include persons or entities directly or proximately harmed by defendant's "relevant conduct" including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. §1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663, 3663(A) or 2248. Pursuant to 18 U.S.C. §§ 3663 and 3664(j)(1), "victims" also include persons or entities (whether private or government: state, federal or tribal) that have paid or costs related to defendant's conduct, including insurance providers and health care providers (including those such as Medicaid, Medicare and AHCCCS). Even if the victim did not suffer physical injury, the defendant expressly agrees to pay restitution for expenditures and future expenses related to treatment for mental or emotional trauma suffered by the victims. Such expenditures shall include, but are not limited to: mental health treatment, counseling, and in-patient treatment. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

c. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the

Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

    d.    <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

    e.    <u>Non-Binding Recommendations</u>. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

**4.**     **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

    a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss Counts 13, 41-45, 48, 50, 52, and 53 of the Third Superseding Indictment (or all remaining counts in the most recent Indictment in this case) against this defendant only.

    b.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.**     **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

    a.    If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

  (1) criminal convictions, history of drug abuse, and mental illness; and

  (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9. **ELEMENTS**

**Conspiracy**

Beginning at a time unknown, but at least on or between November 26 and December 1, 2022, in the District of Arizona and elsewhere:

1. There was an agreement between two or more persons to commit a violation of 18 U.S.C. § 1512(c)(2), Tampering with an Official Proceeding; and

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

**Tampering with an Official Proceeding**

Beginning at a time unknown, but at least on or between November 26 and December 1, 2022, in the District of Arizona and elsewhere:

1. The defendant or co-conspirator did corruptly obstruct, influence, and impede a foreseeable prosecution before a Court of the United States, an official proceeding, and attempted to do so.

10. **FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

The defendant is a spiritual "wife" and follower of co-defendant Samuel Rappylee Bateman. Like Bateman, the defendant is a practicing member of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS"), a subset of the fundamentalist Mormon denominations whose members practice polygamy. In 2019, Bateman began to proclaim himself as the new Prophet of the FLDS. At that time, the defendant and Bateman were living in Colorado City, Arizona, although they did not know each other well and were not yet in a relationship.

Beginning in 2019, Bateman recruited followers, many of whom became his "wives." There were no legal or formal ceremonies to commemorate the "marriages," but "marriage" signified the beginning of Bateman's sexual relationship with each of his "wives," including his child "brides."

In June 2019, the defendant and her family moved to Lincoln, Nebraska. Shortly thereafter, Bateman began visiting and claiming wives, including two young adult "wives" and his first child "bride" who was nine years old. On June 30, 2020, Bateman claimed the defendant and co-defendant Donnae Barlow as his "wives." Shortly after, he also claimed co-defendant Moretta Rose Johnson (then 17) as a "wife." On July 4, 2020, the defendant, Donnae Barlow, and Moretta Rose Johnson travelled from Lincoln, Nebraska to Colorado City, Arizona, to live with Bateman as his "wives."

- 7 -

Over the next year, the defendant witnessed Bateman take numerous additional "wives," including eight more child "brides." The defendant witnessed Bateman engage in illegal sexual activity with his child "brides," and she sometimes participated.

On or about November 9, 2020, in a hotel room in Lincoln, Nebraska, Bateman coordinated a "sacred ordinance" to emulate the "Washing of the Feet." Bateman instructed everyone to get naked, and he attempted to have anal sex with M.J. Bateman could not achieve an erection to complete the act, and he demanded that his "wives" help him, including the defendant, co-defendant Donnae Barlow, and Jane Doe 3.

On or between November 25 and November 27, 2020, Bateman coordinated group sexual activity in a hotel room. Those present included co-defendants Naomi Barlow, Josephine Barlow Bistline, and Moretta Rose Johnson (then age 17); other adult followers of Bateman; and Jane Doe 3. Bateman initiated a video call with the defendant and co-defendant Marona Johnson (who were in Nebraska). At Bateman's direction, Marona Johnson had ten-year-old Jane Doe 6 strip naked and watch a live video stream of sexual activity between Bateman and the others. Co-defendant Ladell Bistline, Jr. also participated in the video call from Colorado City, Arizona.

On another occasion in late 2020, Bateman coordinated more group sexual activity in a hotel room in Lincoln, Nebraska. Many of Bateman's adult followers were present, including the defendant, as well as some of his child "brides." Jane Does 3 and 5 touched Bateman's genitals to help him get an erection so he could have sex with M.J.

The defendant was with Bateman when he transported his adult "wives" and child "brides" back from Lincoln, Nebraska, to Colorado City, Arizona, in early 2021, where they all lived together in a single-family home.

On August 28, 2022, Bateman was pulled over by the Arizona Department of Public Safety. He was arrested and his cell phone was seized. While in custody, Bateman called the defendant and instructed her to delete his Signal account and every message immediately. The defendant and Bateman's other adult "wives" confirmed they were doing it "right now." Bateman used Signal to communicate with his followers, including his "wives."

On September 12, 2022, in a trailer in Utah, Bateman had sex with Jane Doe 10 while the defendant helped by touching Bateman. The following morning, when the defendant learned the FBI was at Bateman's residence, the defendant hid Bateman's tablet and computer in the mountains, as well as the keys to the trailer.

Bateman was arrested on federal charges, and the Arizona Department of Child Safety (AZ DCS) took custody of Bateman's child "brides" and began

dependency proceedings against the parents. In November 2022, Bateman was in custody on federal charges, and additional federal charges related to child sex trafficking were foreseeable. At that time, Bateman and his followers, including the defendant, orchestrated a plan to kidnap Bateman's child "brides" from AZ DCS custody.

On November 26, 2022, the defendant messaged Jane Doe 7, one of the girls in AZ DCS custody, on behalf of Bateman to remind the girls that Bateman was still in custody and not to give up. The next day, the defendant communicated with Bateman and his followers about the plan to kidnap the girls from AZ DCS custody. The defendant also tried to locate Jane Doe 6, the one girl who was not kidnapped.

On November 27, 2022, co-defendants Donnae Barlow, Naomi Bistline, and Moretta Rose Johnson successfully kidnapped eight of the nine girls from AZ DCS custody and transported them to Washington State. In the following days, the defendant communicated with Bateman and his followers, coordinating and reporting everybody's whereabouts. She traveled to California to check on the kidnapped girls. She then traveled separately with other adult "wives" and babies, following Bateman's instructions to keep the babies separate from the girls. The defendant, along with five of Bateman's adult "wives" and the babies, was contacted by law enforcement in Las Cruces, New Mexico, on November 29, 2022.

The kidnapped girls were found in Spokane, Washington, on December 1, 2022.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to

present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

2-26-24
Date

Brenda Barlow
BRENDA BARLOW
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2/26/24
Date

GILLMORE BIRCH BERNARD
Attorney for the Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

```
                                    GARY M. RESTAINO
                                    United States Attorney
                                    District of Arizona

                                              RYAN POWELL
                                              2024.01.25 09:17:05
                                              -07'00'
Date                                DIMITRA H. SAMPSON
                                    JILLIAN BESANCON
                                    RYAN POWELL
                                    Assistant U.S. Attorneys
```

**ACCEPTANCE BY THE COURT**

```
Date                                HONORABLE SUSAN M. BRNOVICH
                                    United States District Judge
```